So Ordered.

Signed this 31 day of March, 2026.



_____

Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

IN RE:

    MICHAEL E HINDES,

               Debtor.

_____

Chapter 7
No. 24-10366-1-PGR

APPERANCES:

INTERNAL REVENUE SERVICE
*Office of the United States Attorney*
445 Broadway, Room 218
Albany, NY 12207

CATHLEEN CLARK, ESQ.

BOYLE LEGAL, LLC
*Attorney for Debtor Michael E. Hindes*
64 2nd Street
Troy, NY 12180

MICHAEL LEO BOYLE, ESQ.

1

## MEMORANDUM-DECISION AND ORDER

Presently pending are (1) a Motion for Violation of the Automatic Stay ("Motion for Violation"), filed by Debtor (Docket No. 63); and (2) a Motion to Annul the Automatic Stay to ratify an Internal Revenue Service ("IRS") levy and/or enforce tax liens on undistributed funds held by the Chapter 13 Trustee ("Motion to Annul"), filed by the IRS. (Docket No. 70). Debtor opposes the Motion to Annul. (Docket No. 73). The IRS opposes the Motion for Violation. (Docket No. 74).

This Court heard oral argument on January 13, 2026, in Albany, New York, with Debtor and the IRS appearing through their above-referenced counsel and being heard. After oral argument, this Court granted the IRS's Motion to Annul and denied Debtor's Motion for Violation.

The following reasons support this Court's decision.

### Jurisdiction

The Court has core jurisdiction over the parties and the subject matter of this contested matter in accordance with 28 U.S.C. §§ 1334(b) and 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

On April 1, 2024, Debtor, by and through counsel, filed a Voluntary Petition under Chapter 13 of the United States Bankruptcy Code. (Docket No. 1). Debtor's petition indicates his monthly income, in the amount of $2,043, is solely from Social

2

Security benefits.[1] (Docket No. 1). Additionally, at the time of Debtor's filing, he owed the IRS a total of $324,813.92. (*See* Docket No. 70). Of that amount, $155,763 is secured through a Notice of Federal Tax Lien recorded with Rensselaer County on November 10, 2008.[2] (*See* Docket No. 70).

On August 7, 2025, the Honorable Robert E. Littlefield, Jr., United States Bankruptcy Judge,[3] held a confirmation hearing and denied Debtor's Chapter 13 Plan due to infeasibility. (Docket No. 49). During the hearing, the Debtor expressed a desire to convert his case to a case under Chapter 7. *Id.* Judge Littlefield stated that once the order denying confirmation was entered he would sua sponte convert Debtor's case to Chapter 7. *Id.* Judge Littlefield entered an order converting the case on August 11, 2025. (Docket No. 51).

At the time of conversion, the Chapter 13 Trustee was holding $5,250 in undistributed Plan payments. (*See* Docket No. 74). On or about August 8, 2025 (prior to entry of the Order converting the case to Chapter 7), the IRS faxed a Notice of Levy to the Chapter 13 Trustee's Office requesting turnover of the undistributed funds.

On October 28, 2025, Debtor filed a Motion for Sanctions for Violation of the Automatic Stay against the IRS. (Docket No. 63). On November 25, 2025, the IRS filed a motion to annul the automatic stay to ratify its levy and collect the pre-

---

[1] Debtor's petition also indicates that his non-filing spouse's monthly income, in the amount of $968, is from Social Security. Therefore, Debtor's combined monthly income of $3,011 is strictly from Social Security benefits.

[2] The IRS timely refiled the Notice on July 31, 2017. (*See* Docket No. 70)

[3] This case was reassigned to this Court upon Judge Littlefield's retirement in October of 2025.

confirmation, undistributed plan payment held by the Chapter 13 Trustee, or in the alternative, to enforce the federal tax liens that encumbered the funds before their transmission to the Trustee. (Docket No. 70).

On December 16, 2025, the IRS filed an objection to Debtor's Motion for Violation and Debtor filed an objection to the IRS's Motion to Annul. (*See* Docket Nos. 73 & 74). The IRS filed a reply in further support of its Motion to Annul on December 22, 2025. (Docket No. 78). Debtor filed a reply in further support of his Motion for Sanctions on December 30, 2025. (Docket No. 82).

Debtor argues that he is entitled to the undistributed funds because, after conversion to Chapter 7, post-petition income and earnings become the Debtor's property. (Docket No. 63). Thus, Debtor contends, the IRS's attempt to collect their debt violated the stay.

The IRS acknowledges that it should have sought stay relief before enforcing its lien against the funds held by the Trustee, but contends that this error was harmless because Debtor would have had no viable defense to a pre-levy motion to lift the stay or to a motion to enforce the IRS's tax lien. (Docket No. 74). To wit, because the scope of the federal tax lien is all encompassing and the Debtor used his social security benefits to fund his Chapter 13 plan, the IRS contends that its rights to the undistributed funds are superior to Debtor's rights under the Bankruptcy Code. (Docket No. 70). Therefore, the IRS argues, retroactive relief from the automatic stay is warranted.

## Analysis

"The Bankruptcy Code empowers bankruptcy courts to take measures that grant relief from the automatic stay, including 'terminating, annulling, modifying, or conditioning' the stay, under certain circumstances." *E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (internal citations omitted).

"Of the four enumerated types of relief in § 362(d), annulment is unique in that it asks the court to retroactively permit an action taken in violation of the stay." *In re Elder-Beerman Stores Corp.*, 195 B.R. 1012, 1017 (Bankr. S.D. Ohio 1996). Courts rarely grant this type of relief. *See Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 978 (1st Cir. 1997) ("[B]ankruptcy courts. . .can grant retroactive relief only sparingly and in compelling circumstances.").

"In the Second Circuit, and in the absence of relief to the contrary, actions taken in violation of the stay are void from the outset." *In re Crichlow*, 666 B.R. 441, 449 (Bankr. E.D.N.Y. 2024). The party that has violated the stay must validate the action retroactively and make a prima facie showing of cause. *See id.* at 449, 451.

In considering a request for retroactive stay relief, courts in this Circuit use the following factors identified in *In re Stockwell*:

(1) If the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay;

(2) If the debtor has acted in bad faith;

(3) If there was equity in the property of the estate;

(4) If the property was necessary for an effective reorganization;

(5) If grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation;

(6) If failure to grant retroactive relief would cause unnecessary expense to the creditor; and

(7) If the creditor has detrimentally changed its position on the basis of the action taken.

262 B.R. 275 (Bankr. D. Vt. 2001).

While courts grant retroactive relief sparingly, "a determination to annul the automatic stay is inherently tied to the facts and circumstances of the particular situation." *Crichlow*, 666 B.R. at 450. Courts are "advised to adopt a holistic approach, where the facts of each [case] will determine whether relief is appropriate under the circumstances." *Id.* at 451 (quoting *In re Thomas*, 639 B.R. 285, 293 (Bankr. S.D.N.Y. 2022)); *see also In re Cunningham*, 506 B.R. 334, 344 (Bankr. E.D.N.Y. 2014) ("Although the factors in *Stockwell* and *Soares* may be consulted, the Second Circuit has not explicitly set forth particular factors that bankruptcy courts must analyze before granting relief from the automatic stay." (internal quotation marks omitted)); *In re Marketxt Holdings, Corp.*, 428 B.R. 579, 589 (S.D.N.Y. 2010) ("The Bankruptcy Court focused on the *Stockwell* factors that it considered relevant to its analysis."); *In re Myers*, 491 F.3d 120, 129 (3d Cir. 2007) ("Other courts have observed that the most important factors in making this determination are (1) whether the creditor was aware of the filing or encouraged violation of the stay; (2) whether the debtor engaged in inequitable, unreasonable, or dishonest behavior; and (3) whether the creditor would be prejudiced.").

In the present case, the IRS had actual knowledge of the Debtor's bankruptcy and acknowledges it should have first filed a motion requesting a modification to the automatic stay because the case was converted and not dismissed. (Docket No. 70). Accordingly, the first *Stockwell* factor weighs against annulling the stay.

As to the second factor, this case is Debtor's fourth bankruptcy filing.[4] Debtor's two most recent cases were dismissed for failure to make plan payments. (*See* 14-11738-1-rel; 16-11692-1-rel). Moreover, the IRS's claim has increased significantly over the years, whereas the Debtor's monthly income has decreased.[5] Debtor's Chapter 13 plan proposed paying $350 per month for sixty months totaling $21,000 (an amount far below the IRS's priority tax debt totaling $40,075.73). (*See* Docket No. 70).

The above-mentioned actions suggest the Debtor has not acted in good faith. *See Cunningham*, 506 B.R. at 344 (finding bad faith when "[t]he [d]ebtor has not described any change in circumstances that. . .would have enabled the [d]ebtor's third bankruptcy case to conclude any differently than the previous two cases). Accordingly, the second *Stockwell* factor weighs in favor of annulling the stay. *See id.* ("Court's have granted *nunc pro tunc* stay relief based upon a debtor's bad faith alone.").

---

[4] Debtor's previous bankruptcies were filed with co-debtor Stephanie F. Hindes in 1988 (88-10326), 2014 (14-11738), and 2016 (16-11692).

[5] As mentioned previously, the IRS's claim is $324,813.92 and of this amount, $155,763 is secured and $40,075.73 is classified as priority tax debt. (Docket No. 70). Debtor's combined monthly income dropped from $3,726.14 to $3,011 (*See* 16-11692-1-rel, Docket No. 1; Docket No.1).

As to the third factor, Debtor does not have an equity interest in the undisbursed funds because the amount is much less than the amount of the federal tax lien. *See In re Levert*, 1994 WL 760590, at *2 (Bankr. N.D. Ohio Oct. 31, 1994) (explaining that there is no equity in "the funds held on account and subject to the levy" because "the amount of proceeds are minimal in relation to the amount of the [IRS's] secured claims"); *In re Hersperger*, 2008 WL 2201455, at *1 (W.D. Penn. Mar. 14, 2008) (finding that the debtor lacked an equity interest in the property because the "value of the subject property is admittedly far less than the amount of the federal tax lien that attached to it"). This factor weighs in favor of granting relief.

As to the fourth factor, the undistributed funds are not necessary for an effective reorganization. Before the case was converted, an effective reorganization was not possible; Debtor's plan was infeasible and there was no indication that the case would become feasible. Upon conversion to a Chapter 7 liquidation, the Debtor is no longer in a chapter meant for reorganization. Thus, the funds are not necessary for an effective reorganization and this factor supports annulling the stay.

As to the fifth factor, Debtor argues that the Tax Levy would not have been approved initially, and the IRS has not demonstrated it is at risk for lack of adequate protection. (Docket No. 73).

Pursuant to 11 U.S.C. § 362(d), a court shall grant relief from stay for cause, including the lack of adequate protection of an interest in property of such party in interest. A creditor seeking relief "must establish a prima facie case by showing a factual and legal right to the relief sought." *In re Rosado*, 2025 WL 1520515, at *3 (Bankr. S.D.N.Y. May 28, 2025).

The IRS filed a Proof of Claim for $324,813.92 due to unpaid tax liabilities and civil penalties, and, of that amount, $155,763 is secured through a Notice of Federal Tax Lien recorded with Rensselaer County on November 10, 2008. (*See* Docket No. 70). Pursuant to 26 U.S.C. § 6321, "[i]f any person liable to pay any tax neglects or refuses to pay that same after demand, the amount. . .shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Once a tax assessment is made, the lien attaches and continues until the liability "is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

Ordinarily, upon dismissal of a chapter 13 or conversion of a chapter 13 to a chapter 7, the debtor is entitled to undistributed funds held by the Chapter 13 Trustee. *See* 11 U.S.C. § 1326(a)(2). Once a conversion order is entered, undisbursed funds are no longer considered property of the bankruptcy estate. 11 U.S.C. § 348(f)(1); *see In re Michael*, 699 F.3d 305, 310 (3d Cir. 2012) ("Because under § 348(a) "the date of the filing of the petition" is the date the debtor filed the Chapter 13 petition, this suggests that property of the Chapter 13 estate acquired *post-petition* is excluded from the property of the new Chapter 7 estate."); *Harris v.*

9

*Viegelahn*, 575 U.S. 510, 518 (2015) ("Absent a bad-faith conversion, § 348(f) limits a converted Chapter 7 estate to property belonging to the debtor "as of the date" the original Chapter 13 petition was filed. Postpetition wages, by definition, do not fit that bill.").

Here, Judge Littlefield states that he intended to enter an order sua sponte granting conversion to a chapter 7 upon entry of an order denying confirmation. There was no objection to this action during the hearing or afterwards. The order converting the case was entered four days after the hearing and three days after the IRS served the levy. Once the order was entered, the undistributed funds were no longer a part of the Debtor's bankruptcy estate. Given this timeline and the fact that federal tax liens attach to "all property and rights to property," if the IRS had brought a motion for relief stay to obtain the undistributed funds after the hearing but before the order converting the case was entered, Judge Littlefield would have granted the motion. *See* 26 U.S.C. § 6321; *see also In re Rios*, 649 B.R. 30, 35 (Bankr. E.D. Wis. 2023) (collecting cases and stating that "[t]he IRS continues to have a federal tax lien on the Debtors' right to Social Security benefits in accordance with 26 U.S.C. §§ 6321-6322."); *In re Aderson*, 250 B.R. 707, 710 (Bankr. D. Mont. 2000) (holding that pre-petition federal tax liens attach to post-petition Social Security benefits if debtor's entitlement to social security benefits arose prepetition); *In re Brown*, 280 B.R. 231, 234 (Bankr. E.D. Wis. 2002) ("[T]he IRS' [prepetition] lien and levy superseded the debtor's right to return of the funds [held by the Trustee] under 11 U.S.C. § 1326(a)(2)."); *In re Foster*, 2024 WL 4655607, at

10

*3 (Bankr. S.D. Ala. Nov. 1, 2024) ("Debtor's entitlement to the Unclaimed Funds is superseded by the IRS's pre-petition, perfected tax lien.").

What is more, over the course of the Debtor's plan he intended to pay $21,000 to the Trustee using Social Security Benefits—the IRS's collateral. Indeed, the Debtor made plan payments with the IRS's collateral totaling $5,250 before the case was converted. Furthermore, the plan did not propose to pay the IRS's priority claim in full. These actions resulted in a decrease in the value of the IRS's lien interest in its collateral and the Debtor did not propose or initiate adequate protection to the IRS in exchange for spending its collateral. Accordingly, the fifth *Stockwell* factor weighs in favor of annulling the stay.

Lastly, the Court finds that the government would be unduly prejudiced if the Court does not grant retroactive stay relief. Specifically, the IRS would incur additional, unnecessary expenses if the Court were to deny relief. The IRS would need to file another levy to obtain the undistributed funds from the Trustee and further defend itself against the Debtor's Motion for Violation of the Automatic Stay. Additionally, to deny the annulment of the automatic stay would essentially permit the Debtor to use the automatic stay "as a shield to attack a result" that the Debtor finds unfavorable but was, in fact, inevitable. *See In re MarketXT Holdings Corp.*, 2009 WL 2957809, at *4; *see generally In re Trammell*, 584 B.R. 824, 832 (Bankr. E.D. Tenn. 2018) (finding that not granting retroactive stay relief would unduly prejudice the IRS because the debtor's MLB disability pension benefits

11

would flow back to the debtor and the funds would likely be lost forever). Accordingly, the sixth *Stockwell* factor weighs in favor of annulling the stay.

Based on the facts and circumstances of the matter and duly weighing the *Stockwell* factors, cause exists to grant retroactive stay relief.

The IRS's Motion to Annul the Automatic Stay (Docket No. 70) is GRANTED and Debtor's Motion for Sanctions (Docket No. 63) is DENIED.  The Chapter 13 Trustee is authorized, and directed, to release the undisbursed funds to the IRS pursuant to its levy.

###